[Civ. No. 2894.    Third Appellate District.—February 13, 1925.].

## A. LOMBARDI, Appellant, v. SINAN SINANIDES et al., Respondents.

[1] VENDOR AND VENDEE—ASSIGNMENT BY VENDOR—RIGHTS OF AS-SIGNEE—DEFENSE.—The transfer by a vendor (who had entered into a contract of sale of his land) of his "right, title and interest in and to said land" to a third party was, in effect, a mere deed of quitclaim; and such third party could make no defense in an action by the vendee for rescission of the contract which was not available to the vendor.

[2] ID.—VENDOR IN DEFAULT—TERMINATION OF VENDEE'S RIGHTS—PERFORMANCE.—A vendor who is in default cannot terminate the right of the vendee until the former has performed or offered to perform his part of the contract.

[3] ID.—SHORTAGE IN ACREAGE—CONSIDERATION—MATERIAL DEFAULT. Where a vendor agreed to deliver possession of 19.78 acres of land to the vendee, but in fact placed the vendee in possession of only 18.58 acres thereof (the consideration failing to the extent of 1.20 acres not so delivered), and according to the purchase price of the land, the value of the 1.20 acres was more than $1,500, the default of the vendor was a material one.

[4] ID.—VENDEE IN DEFAULT—RIGHT TO RESCIND FOR FRAUD OF VEN-DOR.—The default of a vendee does not preclude him from rescinding the contract of sale on the ground of the alleged misrepresentation of the vendor in procuring the execution of the contract.

[5] ID.—UNTRUE STATEMENT CONCERNING BOUNDARY LINE—INFORMA-TION—ACTUAL FRAUD—BELIEF.—The positive untrue statement of

---

3.  Mistake in quantity of land as ground for rescission of sale, note, 4 Ann. Cas. 52.

Tender of less land than quantity provided for, right of purchaser to rescind for breach of contract, note Ann. Cas. 1916D, 1154.

5.  Right of purchaser of land to rely upon representation of seller as to boundaries, note, 14 L. R. A. (N. S.) 1210. See, also, 27 R. C. L. 376.

a vendor made to a vendee as to the easterly boundary line of the premises contracted to be sold, when he (the vendor) did not know the true boundary line, constituted actual fraud, even though the vendor, at the time of making said statement, and at all times thereafter until the vendee commenced an action for rescission of the contract, believed said statement to be true.

[6] ID.—FRAUD—RESCISSION.—Fraud, either actual or constructive, is a sufficient ground for rescission of a contract.

[7] ID. — ACTION FOR RESCISSION — MUTUAL MISTAKE — PLEADING — FINDINGS—EVIDENCE.—In this action by a vendee for rescission of a contract of sale of land upon the ground of misrepresentation by the vendor as to the easterly boundary line of said land, the complaint, supplemented by the answer of the vendor to the effect that he did not know the true boundary line, stated facts sufficient to constitute a cause of action for rescission on the ground of mutual mistake, and the findings were sufficient to support a judgment rescinding the contract on that ground.

[8] ID. — NOTICE OF RESCISSION — TIME — LACHES. — In such action, plaintiff was not guilty of laches in giving notice of rescission, where such notice was given about twenty-nine days after discovery of the true boundary line and of the fact that he had not been placed in possession of all the land described in the contract, and it does not appear that the defendants could have suffered any prejudice from the delay of less than a month in giving notice of rescission.

(1) 18 **C. J.**, p. 154, n. 44; 39 Cyc., p. 1694, n. 73.   (2) 39 Cyc., p. 1375, n. 7.   (3) 39 Cyc., p. 1375, n. 8.   (4) 39 Cyc., p. 1422, n. 34.   (5) 39 Cyc., p. 1260, n. 25.   (6) 13 **C. J.**, p. 611, n. 95.   (7) 39 Cyc., p. 1251, n. 82.   (8) 39 Cyc., p. 1428, n. 64.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

John A. Steele for Appellant.

T. R. Thompson and J. C. Hammel for Respondents.

FINCH, P. J.—December 28, 1921, the plaintiff and defendant Sinanides entered into an agreement by the terms of which plaintiff agreed to purchase and Sinanides to sell "the

6.   See 27 R. C. L. 647.

north half of the east half of the west half of the southwest quarter'' of a certain section of land, together with certain personal property, for $21,000; $2,700 was paid upon the execution of the agreement and the remainder was to be paid in annual installments of $1,000 on the fifteenth day of November of every year thereafter. Plaintiff was ''to erect upon said premises a substantial four-room house and barn on or before July 1st, 1922,'' and to pay all taxes which thereafter became a lien upon the premises. There was a mortgage on the premises in the sum of $6,500, and the agreement provides that the ''buyer agrees to assume and agrees to pay said mortgage according to the terms thereof.'' The agreement provided that ''time is expressly made of the essence hereof'' and that, upon default by plaintiff in payment of any installment of the purchase price or of taxes upon the premises or in the performance of any other covenant or condition of the agreement, the ''seller may consider this agreement at an end, and may re-enter and take possession of said premises, . . . and all payments theretofore made shall be held and retained by seller as and for compensation for the reasonable use and rental of said premises.'' At the time of the execution of the agreement ''Sinanides represented to plaintiff that defendant Sinanides was in possession of all the land described in said contract and that he would deliver possession of all thereof to plaintiff subject to easements for roads and ditches'' and that ''a certain fence then standing near the east boundary line of said premises was the easterly boundary line thereof, whereas in truth and in fact the true easterly boundary line was and is approximately 39 feet east of said fence. . . . The amount of land contained in the described premises set out in said contract is 19.78 acres, according to the government description thereof. . . . The area of the strip of land lying between the true easterly boundary line of said premises'' and said fence is 1.20 acres. ''At the time of making said contract defendant Sinan Sinanides did not know the true boundary of said premises'' and believed that the said fence was upon the true easterly boundary line. The plaintiff believed the representation that the fence was upon the true boundary line and ''he would not have entered into said contract had he known that the true easterly boundary

line of said premises was not as pointed out to him.'' Sinanides did not make such representation ''with the intent to deceive or defraud plaintiff,'' nor did he make any representation as to the number of acres contained in the tract of land described in the agreement. He delivered to plaintiff possession of all the land so described except the 1.20 acres lying east of said fence.

Plaintiff failed to build a barn upon the premises, but placed other permanent improvements thereon of the reasonable value of $2,000. ''Plaintiff discovered a shortage of approximately 1.25 acres in said premises on or about September 1st, 1922, and made no complaint thereof to either of the defendants prior to December 29th, 1922, and then only to defendant Sinan Sinanides.'' Thereafter ''plaintiff harvested from said premises a crop of raisins during the year 1922 of the reasonable value of $1,602.48'' and while in possession of the premises performed labor ''in connection with producing a crop of raisins thereon'' of the reasonable value of $741. He ''did not discover or ascertain the correct easterly boundary line of said premises until on or about December 1st, 1922.'' December 29, 1922, plaintiff served upon Sinanides a written notice of rescission of the agreement, stating that the strip of land lying between the fence and the easterly boundary of the land ''has been held in possession by other parties for a number of years and who claim they have held the easterly portion of said land adversely during this period''; offering to restore the premises of which plaintiff had been placed in possession and execute all necessary papers to effect a retransfer, and to account for the rents and profits; and demanding the return of the $2,700 paid on the purchase price and payment of the reasonable value of the improvements made by plaintiff upon the land. No notice or demand was served upon defendant Groshell and he had no notice or knowledge of the attempted rescission until this action was commenced. The action is based upon the notice of rescission.

Sinanides denied the alleged false representations and prayed for judgment for costs. Groshell filed a separate answer, denying the alleged false representations, and by way of cross-complaint alleged that ''on or about March 27th, 1922, defendant Sinan Sinanides assigned his right,

title and interest in and to said land . . . to W. R. Gro-
shell defendant and cross-complainant herein, and that said
W. R. Groshell is now the owner of said land''; that plain-
tiff had failed to build a barn on the premises; that he
had failed to pay the second installment of taxes for the
year 1922–1923; that he had failed to pay the installment
of $1,000 upon the purchase price which became due Novem-
ber 15, 1922; that ''by reason of said default of plaintiff,
. . . cross-complainant has elected to consider said agree-
ment at an end, and he has been released from all obligation
in law or in equity to convey said property. All moneys
heretofore paid under said agreement are retained as a
reasonable rental for use and occupation of said premises.''
Groshell set up a further cross-complaint in the usual form
of an action to quiet title. He prayed for judgment can-
celing the agreement between plaintiff in Sinanides and
quieting cross-complainant's title to the land.

The court found the foregoing facts, including those al-
leged in the cross-complaints, to be true; that Groshell had
no knowledge of plaintiff's rights, except such as appeared
upon the face of the agreement, until this action was com-
menced; and that ''plaintiff in March, 1922, had knowledge
and notice that . . . Groshell had acquired all the interest
of . . . Sinanides in said property.'' The court made no
finding as to the rental value of the premises during the
time the plaintiff was in possession thereof. Judgment was
entered in accordance with the prayers of defendants and
cross-complainant. This appeal is from the judgment upon
the judgment-roll alone.

There is neither allegation nor finding that Sinanides
assigned his interest in the agreement to Groshell, but, for
the purposes of this opinion only, it may be conceded that
the assignment of the vendor's interest in the land carried
with it his interest in the agreement and the payments to
be made thereunder. [1] The transfer of Sinanides'
''right, title and interest in and to said land'' to Groshell
was, in effect, a mere deed of quitclaim. (*O'Sullivan* v.
*Griffith,* 153 Cal. 502, 505 [96 Pac. 323].) ''It has been
uniformly held that a conveyance of the right, title, and
interest of the grantor vests in the purchaser only what the
grantor himself could claim. . . . This construction is in

accord with the obvious meaning of the language. The grantee in such a deed necessarily takes only what the grantor then had, and subject to all defects and equities which could then have been asserted against the grantor." (*Allison* v. *Thomas,* 72 Cal. 562, 564 [1 Am. St. Rep. 89, 14 Pac. 309]; *Southern Pac. Co.* v. *Dore,* 34 Cal. App. 521 [168 Pac. 147]; *O'Sullivan* v. *Griffith, supra.*) It follows that Groshell could make no defense in this action which was not available to Sinanides.

Respondent contends that a vendee in default cannot rescind. [2] But a vendor who is in default cannot terminate the right of the vendee until the former has performed or offered to perform his part of the contract. (*Krotzer* v. *Clark,* 178 Cal. 736, 739 [174 Pac. 657].) In this case the vendor was first in default in that he failed to deliver possession of all the land which he agreed to deliver to plaintiff. It is true the court found that Sinanides had kept and performed all the covenants and conditions of the agreement on his part, but this general finding is overcome by the express finding that Sinanides represented that he would deliver possession of all the land described in the agreement but that in fact he placed the plaintiff in possession of only 18.58 acres thereof. The consideration failed to the extent of the 1.20 acres not so delivered. [3] The default of Sinanides was a material one. According to the purchase price of the land, the value of the 1.20 acres is more than $1,500.

[4] Neither did plaintiff's default preclude him from rescinding on the ground of the alleged misrepresentation of Sinanides. In the denial of a hearing by the supreme court in *de Bairos* v. *Barlin,* 46 Cal. App. 665, 674 [190 Pac. 188, 192], where the facts were similar to those of the instant case, it is said that the rule invoked "applies only to cases where a rescission is sought or claimed by one party to an executory contract on the ground of a breach of the contract by the other party. . . . We know of no case which holds that such rule applies to a case where the vendee in default on payments due on the contract seeks to avoid and rescind it for fraud of the vendor in procuring its execution, or for mistake inducing its execution."

[5]   The complaint alleged and the court found that the misrepresentation as to the easterly boundary line of the land was in fact made by Sinanides.   The complaint alleged that "the true easterly boundary line of the premises described in said contract was and is approximately forty feet east of the line as represented and pointed out by defendant Sinan Sinanides."   The denial of this allegation in the answer of Sinanides is as follows: "The defendant states that he has no information or belief upon the subject sufficient to enable him to answer the same and placing his denial upon that ground he denies said allegations and each and every part thereof."   The court found that "at the time of making said contract the defendant Sinan Sinanides did not know the true boundary of said premises. . . . That said representations as to said boundary lines were untrue, but, at the time of making said statements, and at all times thereafter, until the commencement of this action, said defendant Sinan Sinanides believed said statements to be true."   The positive untrue statement of Sinanides as to the boundary line, when he had "no information or belief upon the subject," constituted actual fraud.   Section 1572 of the Civil Code provides: "Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: . . . 2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."   In *Spreckels* v. *Gorrill*, 152 Cal. 383, 387 [92 Pac. 1011, 1013], it is said: "If one makes material false statements to another, to induce that other to buy an article and which does induce him to buy to his injury, the defrauding party either knowing them to be untrue, or believing them to be true, but having no sufficient ground for such belief, he will not be protected from liability for his fraudulent conduct by the fact that he did not intend to deceive the other party.   Having actually deceived such other party and having profited by such deceit, he cannot be allowed to retain the advantage, or defeat liability, on the ground that he acted in good faith without actual intent to deceive."

[6] Fraud, either actual or constructive, is a sufficient ground for rescission of a contract. In a note appearing in Annotated Cases 1913C, 63, where a large number of cases are cited, it is said: "In equity it is generally held that where a vendor of realty makes a false representation of a material fact, it is not a good defense to an action by the vendee seeking relief that such representation was innocently made. . . . This rule is most frequently applied in actions for the rescission of contracts, it being held that a false representation by a vendor of realty of a material fact constituting an inducement to the contract of purchase, and on which the purchaser had the right to rely, is a ground for the rescission of his contract by a court of equity, and that, too, though the party making the representation may have been ignorant as to whether it was true or false; the real inquiry being not whether the vendor knew the representation to be false, but whether the vendee believed it to be true and was misled by it in entering into the contract." "A party will always be held to make good his statement in the form in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his own peril, and must make good his assertion." (*Alvarez* v. *Brannan,* 7 Cal. 504, 508.) In *Muller* v. *Palmer,* 144 Cal. 305, 312 [77 Pac. 954, 957], after quoting the foregoing language, it is said: "The same rule is laid down by all the authorities." In *de Bairos* v. *Barlin, supra,* page 670, it is said: "Constructive fraud is defined by our code as 'any breach of duty which without an actual fraudulent intent gains an advantage to the person in fault . . . by misleading another to his prejudice.' (Sec. 1573, Civ. Code.) It was certainly a breach of the vendor's duty not to inform himself correctly regarding the boundaries of the land he was seeking to sell." In *Del Grande* v. *Castelhun,* 56 Cal. App. 366, 367 [205 Pac. 18], an action to rescind a contract, it is said: "On the merits of the case, it is said that the evidence is insufficient to support the finding of fraud because there is no showing of a confidential relation between the parties or of appellant's knowledge of the falsity of the representations. Under the particular circumstances it was not necessary to show either. One dealing with the owner

of real property may assume that he knows the true boundaries and may rely on his representations to that extent." In *Scott* v. *Delta Land etc. Co.*, 57 Cal. App. 320, 328 [207 Pac. 389, 392], it is said: "Aside from the provisions of section 1572 of the Civil Code, it is not established by the weight of authority in the United States that a party to a contract may innocently and with belief in the truth of his statements misrepresent to the opposite party conditions material to the consideration to be rendered by the former and escape liability. In a civil action the good faith of the party who procures the assent of another to the making of a contract by material misrepresentations is of no moment." Hearings in the supreme court were denied in the last three cases cited.

[7] It may be further stated that the complaint, supplemented by the answer of Sinanides to the effect that he did not know the true boundary line, states facts sufficient to constitute a cause of action for rescission on the ground of mutual mistake, and the findings are sufficient to support a judgment rescinding the contract on that ground.

[8] Respondent further contends that the plaintiff waived his right to rescind by remaining in possession and harvesting the grape crop on the land after he discovered the shortage in acreage. The court found that there was no misrepresentation as to the acreage contained in the tract and therefore the mere shortage gave the plaintiff no right to rescind. Government subdivisions of land are often found to be short in acreage. The court found that the plaintiff did not discover the location of the true boundary line and that he had not been placed in possession of all the land described in the agreement until December 1, 1922, and that he gave notice of rescission on the 29th of that month. It may be presumed that the grape crop was completely harvested by the 1st of December. It does not appear that the defendants could have suffered any prejudice from the delay of less than a month in giving notice of rescission. Mere delay for so short a time does not amount to laches. (*Stone* v. *McCarty*, 64 Cal. App. 158, 168 [220 Pac. 690]; *French* v. *Freeman*, 191 Cal. 579, 589 [217 Pac. 515].)

In the absence of a finding as to the rental value of the premises while in plaintiff's possession, there is no basis upon which to direct the entry of judgment in favor of plaintiff. All the parties should be given leave to amend their pleadings, if they so request, in order to more certainly determine their respective rights.

The judgment is reversed.

Plummer, J., and Hart, J., concurred.