91 F.3d 155
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard R. SYLVESTER, Plaintiff-Appellant,
and
United States, ex rel., Jean-Francois Truong; Curtis Dane;
Terrence F. Schielke; Eugene Ottaviano; Richard
P. Croswell, Plaintiffs,
v.
NORTHROP GRUMMAN CORPORATION, a California corporation,
Defendant-Appellee.
UNITED STATES, ex rel., Jean Francois TRUONG, Plaintiff,
and
Richard Croswell, Plaintiff-Appellant,
v.
NORTHROP GRUMMAN CORPORATION, a California corporation,
Defendant-Appellee.
 No. 95-55220, 95-56058.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided July 10, 1996.
 
 Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 INTRODUCTION
 
 2
 Richard Sylvester and Richard Croswell brought claims against Northrop Grumman Corporation for wrongful discharge and as qui tam relators under the False Claims Act. Their appeals have been consolidated. Sylvester appeals (1) the dismissal of his qui tam claim, (2) the denial of his motion for post-dismissal relief, and (3) the denial his motion for post-judgment relief. Croswell appeals the summary judgment for Northrop on his qui tam claim and the judgment as a matter of law for Northrop on his federal wrongful discharge claim. We affirm.
 
 SYLVESTER DISCUSSION
 I. The Dismissal Order
 A. Fraud in the Inducement
 
 3
 Sylvester contends that there was collusion between Northrop and Hafif and that Sylvester signed the settlement agreement under the misguided assumption that he was only releasing his wrongful discharge claims. He argues that the settlement agreement was induced by fraud, and therefore we should vacate the district court's dismissal of his qui tam claim.
 
 
 4
 Even when the underlying cause of action is federal, the construction and enforcement of settlement agreements are governed by principles of state contract law. United Commercial Ins. v. Paymaster Corp., 962 F.2d 853, 857 (9th Cir.1992). California law provides that "recision is available for a unilateral mistake, when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." Merced County Mut. Fire Ins. v. State, 284 Cal.Rptr. 680, 684 (Cal.App.1991). The implication of this rule is that a party who signs an agreement "generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it," Operating Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1504 (9th Cir.1984) (applying California law), but if the other contracting party induces the signature by fraud, the signatory can rescind. See id. (citing Chandler v. Aero Mayflower Transit Co., 374 F.2d 129, 136 (4th Cir.1967)).
 
 
 5
 Nothing in the record suggests that Northrop induced Sylvester's signature by fraud or had any idea that Sylvester had not read the settlement agreement. Since Hafif was Sylvester's lawyer and not the other contracting party, Sylvester's allegations that Hafif tricked him are unavailing. If Hafif lied to Sylvester about the contents of the settlement agreement, then Sylvester may have a state claim against Hafif but nothing more.
 
 B. Void as against Public Policy
 
 6
 Sylvester contends that dismissal of his qui tam claim violated public policy because it was unfair to the government. But a party " 'can no more repudiate a [settlement agreement] than he could disown any other binding contractual relationship.' " In re Springpark Assoc., 623 F.2d 1377, 1380 (9th Cir.1980) (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir.1978)). Once a party enters a settlement agreement, " 'the actual merits of the controversy become inconsequential' " to its enforcement. Id. The district court was not obligated to rescind the settlement agreement simply because Sylvester may have made a bad deal.
 
 C. Government Consent
 
 7
 Sylvester contends that the district court erred in dismissing his qui tam claim because the government objected to the settlement agreement. The Federal Claims Act provides that a qui tam action "may be dismissed only if the court and the Attorney General give written consent to the dismissal...." 31 U.S.C. § 3730(b)(1). We have held, however, that unless there is intervention, the government does not have an "absolute right" to bar dismissal. See Killingsworth v. Northrop Corp., 25 F.3d 715, 723 (9th Cir.1994). Congress intended "to place full responsibility for False Claims Act litigation on private parties, absent early intervention by the government or later intervention for good cause[.]" Id. The government did not try to intervene. Sylvester had full authority to agree to dismiss the government's claims with prejudice.
 
 II. The Post-Dismissal Order
 
 8
 Sylvester filed a post-dismissal motion seeking to vacate the dismissal order. In his supporting declaration, Sylvester alleged that Hafif had misled him into signing the settlement agreement and that Hafif had failed to give him the money he was owed under the settlement agreement. The order signed by the district court held that Sylvester was bound by the settlement agreement, but it also found that Hafif had provided exemplary service and had not cheated Sylvester out of settlement proceeds. Sylvester contends that we should vacate the order; it seems his concern is that the district court's findings will have an estoppel effect on his state claims against Hafif. We decline to vacate the order. There is no question that the district court had jurisdiction to determine whether the settlement agreement had been induced by fraud, and the district court made clear that it was not deciding Sylvester's attorney-client claims:
 
 
 9
 MR. SYLVESTER: Okay. But then we say are each of those expenses valid and I say that is a matter not for this tribunal. That is a state court matter or a matter for arbitrators for the state bar to which this matter has been referred.
 
 
 10
 THE COURT: But that is not my problem here.
 
 
 11
 MR. SYLVESTER: Your problem is only whether or not--
 
 
 12
 THE COURT: You are bound.
 
 
 13
 It is for the state court to determine the possible estoppel effect of the district court's findings.
 
 III. The Order Denying Post-Judgment Relief
 
 14
 Sylvester filed a post-judgment motion seeking to vacate the dismissal order. F.R.C.P. 60(b) provides:
 
 
 15
 ... the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ... [or] fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....
 
 
 16
 In his F.R.C.P. 60(b) motion, Sylvester did not introduce any new evidence or raise any new arguments supporting his theory that Northrop had induced him to sign the settlement agreement by fraud. The district court did not abuse its discretion in refusing to vacate the dismissal order or in denying any the other relief Sylvester requested.
 
 CROSWELL DISCUSSION
 I. False Claims Act
 A. Summary Judgment
 
 17
 To defeat a motion for summary judgment, the nonmoving party may not rely on "mere allegations." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It must raise "significant probative evidence" that is "sufficient" for the jury "to return a verdict for that party"; summary judgment may be granted if the evidence is "merely colorable." Id. at 249.
 
 
 18
 The False Claims Act provides that "[a]ny person who ... knowingly presents, or causes to be presented, to an officer of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval ... is liable to the United States Government...." 31 U.S.C. § 3729(a)(1). The district court did not err in holding that there was no genuine issue of material fact. Croswell fails to identify a block of engineer time billed to the government, state the nature of the work performed by the engineer, and explain why the charge was improper. There is no significant probative evidence from which a jury could infer that Northrop knowingly presented a false or fraudulent claim for payment.
 
 II. Conflicting Interrogatories
 
 19
 Croswell contends that the district court erred in resolving conflicting answers to special verdict interrogatories. F.R.C.P. 49(a) authorizes the district court to submit special verdict interrogatories to the jury. The Supreme Court held in Gallick v. Baltimore & Ohio R. Co. that when the jury answers interrogatories inconsistently, the judge has a duty under the Seventh Amendment to "harmonize" or "reconcile" them. 372 U.S. 108, 119 (1962). We applied Gallick in Floyd v. Lewis and held that although it would be a violation of the Seventh Amendment to disregard a jury's finding of fact, if the district court " 'has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions.' " 929 F.2d 1390, 1398 (9th Cir.1991) (quoting White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir.1987)). Floyd held that an inconsistent answer was "surplusage" because "the district court expressly stated on the special verdict form that the jury should not proceed to question 14 if it answered 'No' to question 13." Id.
 
 
 20
 The special verdict interrogatories did not expressly state that the jury was not to proceed if it found that Northrop did not fire Croswell because of his "activities in furtherance of Mr. Troung's" lawsuit. But that fact is not dispositive. Question II.B. addressed in precise terms a necessary element of Croswell's federal wrongful discharge claim. A negative answer was meant to terminate further inquiry; the jury's answers to the remaining questions were surplusage.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3